UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Tina Marie Ramsey,
 Claimant

 v.                                  Case No. 18-cv-553-SM
                                     Opinion No. 2019 DNH 127

Andrew Saul,[1] Commissioner,
Social Security Administration,
 Defendant


**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Tina Marie Ramsey, moves to reverse or vacate the Commissioner's decision denying her applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI. See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act"). The Commissioner objects and moves for an order affirming his decision.

For the reasons discussed, claimant's motion is denied, and the Commissioner's motion is granted.

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security. He replaced the nominal defendant, Nancy A. Berryhill, who had been Acting Commissioner of Social Security.

**Factual Background**

I.  Procedural History.

In September of 2015, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she was disabled and had been unable to work since January 3, 2015. Claimant was 37 years old at the time and had acquired sufficient quarters of coverage to remain insured through December of 2019. Claimant's applications were denied and she requested a hearing before an Administrative Law Judge ("ALJ").

In May of 2017, claimant, her attorney,[2] and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo. After obtaining additional, post-hearing evidence, the ALJ issued her written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of her decision. Claimant then requested review by the Appeals Council. That request was denied. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review.

---

[2]   At the hearing, claimant was represented by Laurie Smith Young, Esq. She is now represented by D. Lance Tillinghast, Esq.

Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 7). In response, the Commissioner filed a "Motion for an Order to Affirm the Commissioner's Decision" (document no. 9). Those motions are pending.

II. Factual Background.

A detailed factual background can be found in claimant's statement of facts (document no. 7-2) and the Commissioner's statement of facts (document no. 8). Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if

supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly, then, it is something less than a preponderance of the evidence.  So, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  See Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of

Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To
satisfy that burden, the claimant must prove, by a preponderance
of the evidence, that her impairment prevents her from
performing her former type of work. See Manso-Pizarro v.
Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir.
1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985). If
the claimant demonstrates an inability to perform her previous
work, the burden shifts to the Commissioner to show that there
are other jobs in the national economy that she can perform, in
light of her age, education, and prior work experience. See
Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2
(1st Cir. 1982). See also 20 C.F.R. §§ 404.1512, 404.1560,
416.912, and 416.960.

In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the claimant's testimony or that of
other witnesses; and (3) the claimant's educational background,
age, and work experience. See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5,
6 (1st Cir. 1982). Ultimately, a claimant is disabled only if
her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do
> [her] previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for
> work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability: January 3, 2015. Admin. Rec. at 15. Next, she concluded that claimant suffers from the following severe impairments: "arthritis, status post ankle arthrodesis and hardware removal; degenerative disc disease;

6

left shoulder impingement; obesity; depression; anxiety and borderline intellectual functioning." Id. But, the ALJ determined that claimant's impairments, whether considered alone or in combination, did not meet or medically equal any of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 15-18. Claimant does not object to any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of "light" work, subject to the following fairly restrictive limitations:

> she can stand up to four hours, walk up to four hours, and sit up to eight hours, in an eight-hour day. She can occasionally reach overhead and in all other directions with the left (non-dominant) upper extremity, and she can occasionally push and pull with the left (non-dominant) upper extremity. The individual can never climb ladders, ropes, or scaffolds, never crawl and occasionally climb ramps and stairs, balance, stoop, kneel and crouch. The individual should never work around unprotected heights or moving machinery. She can frequently operate a motor vehicle in the course of work. She can frequently work in wet or humid environments. She should avoid more than occasional exposure to extreme cold, extreme heat, dusts, odors, fumes and pulmonary irritants. The individual is limited to no more than a loud noise environment. The individual is further limited to simple, routine tasks in two hour blocks over an eight hour day, with no fast or production rate pace work. She can tolerate occasional simple, decision-making, occasional changes in the work setting and occasional interaction with the public.

Admin. Rec. at 18-19. In light of those restrictions, the ALJ concluded that claimant was not capable of performing any past relevant work. Id. at 24. See also Id. at 69-70 (vocational expert's testimony about claimant's work history as a babysitter and line cook).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 24. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of her decision.

## Discussion

Claimant challenges the ALJ's decision on two grounds, asserting that she erred by: (1) failing to properly consider the opinions of one of claimant's treating sources when determining claimant's RFC; and (2) failing to give appropriate weight to claimant's testimony about the disabling symptoms and limitations caused by her impairments.

I.  Opinion Evidence.

Claimant's medical history is fairly lengthy and, at more than 1,300 pages, the record is substantial. But, the parties focus almost exclusively on the medical opinions rendered by four medical professionals:

(1) Treating psychologist Donna Novelli, Ph.D., who examined claimant twice during the relevant period. Admin. Rec. at 1092-97.

(2) Examining psychologist Stefanie L. Griffin, Ph.D., who also examined claimant twice during the relevant period. Id. at 279-84; 792-98.

(3) Non-examining orthopedic surgeon, Elizabeth Nolan, M.D., who reviewed claimant's medical records and completed a post-hearing "Medical Source Statement of Ability to do Work-Related Activities (Physical)." Id. at 1204-14.

(4) Non-examining state agency physician Laura Landerman, Ph.D. Id. at 84-93.

Physical Impairments. Claimant first alleges that the ALJ erred in failing to properly account for Dr. Nolan's observation that claimant "may need to elevate right leg periodically and may need special shoe accommodation." Admin. Rec. at 1209. Claimant goes on to assert that this "limitation" is likely related to her arthritis, which she testified prevented her from driving long distances, standing for anything more than a few minutes, and walking long distances. See Claimant's memorandum (document no. 7-1) at 6.

Parenthetically, the court notes that claimant has not pointed to (nor could the court find) even a single other reference in the record to claimant's possible need to elevate her right leg. And, when asked by the ALJ whether she required any "special shoes or inserts," claimant said that she did not. Rather, she stated that when purchasing shoes, she simply needed to be mindful of what type of shoe she bought. That is, she had to make sure they don't put pressure on the pin that was placed in her right foot in 2001 to surgically repair a fracture. Admin. Rec. at 66-67. Approximately five months after the hearing, in October of 2017, claimant presented to the Wentworth Douglass Hospital, complaining of "bilateral foot pain." She told the treating physician's assistant that although she did own orthotic shoes, she did not wear them. Id. at 1294. There is, then, scant evidence to support the notion that claimant needs either to elevate her right leg or wear orthopedic shoes.

Beyond the speculative reference to claimant's potential need to elevate her leg and/or wear orthopedic shoes, Dr. Nolan opined that claimant could: perform activities like shopping; travel without a companion for assistance; ambulate without need for a walker, cane, or crutches; and walk a block at a reasonable pace, even on rough surfaces. Admin. Rec. at 1209. She also opined that claimant can sit for up to 8 hours without

interruption, stand for up to 2 hours, and walk for up to 2 hours. Id. at 1205. Consequently, it does not appear that Dr. Nolan's suggestion that claimant "may" need to elevate her leg and/or obtain orthopedic shoes actually imposes any additional functional limitation(s). See, e.g., Dimambro v. US Soc. Sec. Admin., 2018 DNH 4, 2018 WL 301090, at *5 (D.N.H. Jan. 5, 2018) (noting that an ALJ need only "explain the meaning of the opinion or address it as a limitation" when a medical source opinion "can reasonably be read to include a specific functional limitation.") (citation and internal punctuation omitted).

Moreover, as the Commissioner notes, even if Dr. Nolan's observations could be viewed as a specific functional limitation, and if there were substantial evidence to support finding such a limitation, claimant has not shown (or even suggested) that the ALJ's RFC finding would not accommodate that limitation. The ALJ's RFC determination limits claimant to standing and walking for no more than a total of 4 hours in an 8-hour workday. Consequently, there are 4 additional hours in the workday that claimant could elevate her leg if necessary. And, there is no suggestion that claimant's (potential) need for a special shoe would preclude her for performing the work-related functions determined by the ALJ.

More broadly, the court notes that while four medical professionals discussed claimant's various physical and mental impairments in detail, only Dr. Nolan completed a "Medical Source Statement of Ability to do Work-Related Activities" and offered an opinion as to claimant's physical limitations. And, the ALJ sustainably adopted Dr. Nolan's opinions in determining claimant's RFC (with two exceptions: a few non-exertional limitations, which the ALJ concluded were more restrictive than Dr. Nolan; and the suggestion that claimant "may" need to elevate her right leg). The ALJ did not err in calculating claimant's RFC. Nor did she err in relying largely upon the opinions of Dr. Nolan, or in failing to discuss any references to claimant's potential need to elevate her leg or wear orthopedic shoes.

<u>Mental Limitations</u>. Next, claimant asserts that the ALJ erred by dismissing the opinions offered by Dr. Novelli as having "no probative value." Admin. Rec. at 23. But, the ALJ adequately explained her decision to discount those opinions:

> Dr. Novelli opined, after a brief treating relationship with the claimant [i.e., two office visits], that she had "extreme" limitations in her ability to understand, remember or apply information, interact with others and concentrate, persist or maintain pace and "marked" limitation adapting or managing oneself. This checklist-style form appears to have been completed as an accommodation to the

>   claimant and includes only conclusions regarding
>   functional limitations without any rationale for those
>   conclusions.

Admin. Rec. at 23. See also Id. at 1092-97 ("Mental Impairment Questionnaire" completed by Dr. Novelli). In addition to noting claimant's short treatment history with Dr. Novelli,[3] the ALJ also explained that Dr. Novelli's opinions were not supported by objective evidence, nor were they supported by claimant's activities of daily living. Id.

On the other hand, the consulting psychologist, Dr. Griffin (who, like Dr. Novelli, also examined claimant twice), generally concluded that claimant's intellectual limitations (e.g., her slow processing speed) were not particularly significant, and her psychiatric impairments (e.g., anxiety) were well managed with medication. So, for example, after evaluating claimant in November of 2013, Dr. Griffin concluded that: although her intellect is estimated to be in the "below average," possibly "borderline," range, claimant's speech was within normal limits and her thought processes were generally logical and goal-oriented; claimant maintains a fairly full range of daily

---

[3] The record indicates that claimant met with Dr. Novelli twice. She appears to have cancelled all of her other scheduled sessions with Dr. Novelli. See Admin. Rec. at 1055, 1056, 1057, and 1058.

13

activities, including household cleaning, laundry, and meal preparation; she also is responsible for her three young children and maintains the family's finances; she generally appears capable of appropriate interactions with others; and her "psychiatric symptoms appear to be generally well-controlled at this time and do not appear to adversely impact her capacity to adhere to a work schedule or to interact appropriately with supervisors/co-workers." Admin. Rec. at 282-83.

Approximately two and one-half years later, in June of 2016, Dr. Griffin again examined claimant. She again observed that claimant suffers from somewhat slowed processing speed, and scored in the "low average" to "borderline impaired" range on various verbal and nonverbal intellectual performance tests. Id. at 794-95. But, Dr. Griffin again noted that claimant maintains a fairly full range of daily activities:

> She reported that she prepares dinner from scratch for the family. She indicated that she keeps up with the laundry and household cleaning because she has "OCD." She manages her medications without reported difficulty. She also manages the household finances. . . . She drives without difficulty.

Id. at 796. See also Id. at 797 ("Mrs. Ramsey appears independent in completing daily activities. She presented alone to the evaluation and completed intake paperwork independently.

14

She manages the household laundry, cleaning and meals without reported difficulty. She drives and manages her medications and the household finances.").

Ultimately, Dr. Griffin concluded that claimant "appears capable of understanding and remembering basic, but not complex instructions and information" and "capable of attending to and completing basic, but not more complex tasks." Id. And, finally, Dr. Griffin opined that, "Psychological factors do not appear to have a significantly adverse impact upon her capacity to adhere to a regular work schedule, interact appropriately with others, or follow basic work-related instructions. Because of intellectual limitations, she is expected to have difficulty following more complex work-related instructions and making complex work-related decisions." Id. at 797-98.

The ALJ's decision to afford Dr. Griffin's opinions "great weight" is amply supported by the record, as well as the reasons expressed by the ALJ. Id. at 21-22. Similarly, the ALJ adequately explained her decision to ascribe "no probative value" to the opinions of Dr. Novelli. Specifically, she noted claimant's comparatively short treatment history with Dr. Novelli, the fact that it appeared that Dr. Novelli completed the checklist-style form as an accommodation to claimant, and

that Dr. Novelli (unlike Dr. Griffin) expressed only conclusions, without providing supporting rationales or pointing to supportive evidence.

In the end, the record contained conflicting mental health opinions from two examining sources - both of whom had examined claimant twice. The ALJ considered both of those opinions, but sustainably concluded that Dr. Griffin's opinions were better supported by the record and more persuasive. The court can find no error in the ALJ's decision to credit the opinion evidence in that manner, or her explanation for that decision.

II. <u>Claimant's Testimony and Subjective Symptom Allegations</u>.

Finally, claimant asserts that the ALJ "erroneously evaluated [her] testimony regarding her symptoms and limitations in determining her RFC." Claimant's memorandum at 9. Specifically, she claims the ALJ "failed to acknowledge [her] testimony indicating that she was actually extremely limited in her daily activities, including her ability to care for her children, due to her physical and mental limitations." <u>Id</u>. at 11. The court disagrees.

The ALJ summarized claimant's testimony about her daily activities, her lower back and foot pain, her difficulty

driving, and her claimed inability to stand from more than six to eight minutes at a time. See Admin. Rec. at 19, 55. And, the ALJ found that claimant's medically determinable impairments could reasonably be expected to cause claimant's alleged symptoms. But, the ALJ concluded that claimant's statements about the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the records." Id. at 20. The ALJ then discussed, in detail, the basis for that conclusion. See Admin. Rec. at 20-23. See also Soc. Sec. Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2016 WL 1119029 *2 (Mar. 16, 2016) ("[A]n individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.").

So, contrary to claimant's suggestion, the ALJ did not "fail to acknowledge" claimant's testimony about her alleged limitations. The ALJ summarized claimant's testimony, but found that it was not entirely consistent with other evidence in the record. In other words, the ALJ properly engaged in "an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work." Id., 2016 WL 1119029 *1, n.1. And, contrary to claimant's

17

implicit suggestion, see claimant's memorandum at 9-10, the ALJ did not engage in an impermissible evaluation of claimant's overall credibility, her character, or her propensity for truthfulness. Soc. Sec. Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2016 WL 1119029, at *10.

Claimant has not identified any flaw in the ALJ's reasoning, nor has she pointed to substantial evidence undermining the ALJ's conclusions. Instead, she seems to ask the court to simply reweigh her testimony and the evidence of record in a manner more favorable to her. That is not the court's role, nor does the court have authority to do so. See, e.g., Gillen v. Colvin, 2017 DNH 37, 2017 WL 775785, at *6 (D.N.H. Feb. 28, 2017) ("Claimant's argument is best construed as invitation to the court to reweigh the evidence before the ALJ, but that is an invitation the court must decline.") (citations omitted).

**Conclusion**

Judicial review of the ALJ's decision is both limited and deferential. This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act.

18

Consequently, the issue before the court is not whether it believes claimant is disabled. Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and the claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not

19

disabled, as that term is used in the Act, at any time prior to the date of the ALJ's decision (January 2, 2018). The ALJ's determination of claimant's RFC, her stated reasons for crediting some medical opinions while discounting others, and her analysis of claimant's subjective allegations of disabling symptoms are well-reasoned and supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Commissioner's motion to affirm his decision (document no. 9) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 9, 2019

cc: D. Lance Tillinghast, Esq.
Sarah E. Choi, Esq.

20